# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |
|---|
| UNITED STATES OF AMERICA, |
| *Plaintiff*, |
| v. |
| THE WALT DISNEY COMPANY, and TWENTY-FIRST CENTURY FOX, INC., |
| *Defendants*. |

## <u>PROPOSED FINAL JUDGMENT</u>

WHEREAS, Plaintiff, the United States of America, filed its Complaint on June 27, 2018, and defendant The Walt Disney Company ("Disney") and defendant Twenty-First Century Fox, Inc. ("Fox"), by their respective attorneys, have consented to the entry of this Final Judgment without trial or adjudication of any issue of fact or law, and without this Final Judgment constituting any evidence against or admission by any party regarding any issue of fact or law;

AND WHEREAS, defendants agree to be bound by the provisions of this Final Judgment pending its approval by the Court;

AND WHEREAS, the essence of this Final Judgment is the prompt and certain divestiture of certain rights or assets by Disney to assure that competition is not substantially lessened;

AND WHEREAS, the United States requires Disney to make certain divestitures for the purpose of remedying the loss of competition alleged in the Complaint;

AND WHEREAS, Disney has represented to the United States that the divestitures required below can and will be made and that defendants will later raise no claim of hardship or difficulty as grounds for asking the Court to modify any of the divestiture provisions contained below;

NOW THEREFORE, before any testimony is taken, without trial or adjudication of any issue of fact or law, and upon consent of the parties, it is ORDERED, ADJUDGED, AND DECREED:

## I. JURISDICTION

This Court has jurisdiction over the subject matter of, and each of the parties to, this action.  The Complaint states a claim upon which relief may be granted against defendants under Section 7 of the Clayton Act, as amended, 15 U.S.C. § 18.

## II. DEFINITIONS

As used in this Final Judgment:

A.      "Disney" means defendant The Walt Disney Company, a Delaware corporation headquartered in Burbank, California, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships, and joint ventures, and their directors, officers, managers, agents, and employees.

B.      "Fox" means defendant Twenty-First Century Fox, Inc., a Delaware corporation headquartered in New York, New York, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships, and joint ventures, and their directors, officers, managers, agents, and employees.

C.      "Acquirer" means an entity to which defendants divest any of the Divestiture Assets.

D.     "Fox RSNs" means all of Fox's interests in the following video networks or programming assets:

(1) Fox Sports Arizona;

(2) Fox Sports Carolinas;

(3) Fox Sports Detroit;

(4) Fox Sports Florida;

(5) Fox Sports Indiana;

(6) Fox Sports Kansas City;

(7) Fox Sports Midwest;

(8) Fox Sports New Orleans;

(9) Fox Sports North;

(10) Fox Sports Ohio;

(11) SportsTime Ohio;

(12) Fox Sports Oklahoma;

(13) Fox Sports San Diego;

(14) Fox Sports South;

(15) Fox Sports Southeast;

(16) Fox Sports Southwest;

(17) Fox Sports Sun;

(18) Fox Sports Tennessee;

(19) Fox Sports West;

(20) Prime Ticket;

(21) Fox Sports Wisconsin; and

(22) the YES Network.

E.     "Divestiture Assets" means all of Fox's interests in the Fox RSNs, including all of the assets, tangible or intangible, necessary for the operations of the Fox RSNs as viable, ongoing video networks or programming assets, including, but not limited to, all real property (owned or leased), all broadcast equipment, office furniture, fixtures, materials, supplies, and other tangible property; all licenses, permits and authorizations issued by any governmental organization relating to the operation of the asset; all contracts (including content, programming and distribution contracts and rights), agreements (including transition services agreements), leases, and commitments and understanding of defendants; all trademarks, service marks, trade names, copyrights, patents, slogans, programming materials, and promotional materials relating to each video network; all customer lists, contracts, accounts, credit records, and all logs and other records maintained by Fox in connection with each video network.  Except as set forth in Paragraph IV(H) of this Final Judgment, Divestiture Assets do not include trademarks, trade names, service marks, or service names containing the name "Fox."

F.     The term "Transaction" means the transaction that is the subject of the Agreement and Plan of Merger among Twenty-First Century Fox, Inc., The Walt Disney Company, TWDC Holdco 613 corp., WDC Merger Enterprises II Corp., and WDC Merger Enterprises I, LLC, dated June 20, 2018.

## III. APPLICABILITY

A.     This Final Judgment applies to Disney and Fox, as defined above, and all other persons in active concert or participation with any of them who receive actual notice of this Final Judgment by personal service or otherwise.

B.     If, after the closing and prior to complying with Section IV and Section V of this Final Judgment, Disney sells or otherwise disposes of all or substantially all of the assets or lesser business units that include the Divestiture Assets, it shall require the purchaser to be bound by the provisions of this Final Judgment.  Disney need not obtain such an agreement from the Acquirer(s) of the assets divested pursuant to this Final Judgment.

## IV. <u>DIVESTITURES</u>

A.     Disney is ordered and directed, within ninety (90) calendar days after the closing of the Transaction, or five (5) calendar days after notice of entry of this Final Judgment by the Court, whichever is later, to divest the Divestiture Assets in a manner consistent with this Final Judgment to one or more Acquirers acceptable to the United States, in its sole discretion.  The United States, in its sole discretion, may agree to one or more extensions of this time period not to exceed ninety (90) calendar days in total, and shall notify the Court in such circumstances. With respect to divestiture of the Divestiture Assets by Disney or a trustee appointed pursuant to Section V of this Final Judgment, Disney agrees to use its best efforts to divest the Divestiture Assets as expeditiously as possible after the closing of the Transaction.  For the avoidance of doubt, nothing in this Final Judgment shall require Fox to divest any of the Divestiture Assets prior to the closing of the Transaction.

B.     In accomplishing the divestiture ordered by this Final Judgment, Disney promptly shall make known, by usual and customary means, the availability of the Divestiture Assets. Disney shall inform any person making an inquiry regarding a possible purchase of the Divestiture Assets that they are being divested pursuant to this Final Judgment and provide that person with a copy of this Final Judgment.  Defendants shall offer to furnish to all prospective Acquirers, subject to customary confidentiality assurances, all information and documents

relating to the Divestiture Assets customarily provided in a due diligence process, except such information or documents subject to the attorney-client privilege or work-product doctrine. Defendants shall make available such information to the United States at the same time that such information is made available to any other person.

       C.     Defendants shall provide the Acquirer(s) and the United States information relating to the personnel involved in the production and operation of the Divestiture Assets to enable the Acquirer(s) to make offers of employment.  Defendants will not interfere with any negotiations by the Acquirer(s) to employ upon closing of the sale of each of the Divestiture Assets any defendant employee whose primary responsibility is the production and operation of the Divestiture Assets.

       D.     Defendants shall permit the prospective Acquirer(s) of the Divestiture Assets to have reasonable access to personnel and to make inspections of the Divestiture Assets; access to any and all environmental, zoning, and other permit documents and information; and access to any and all financial, operational, or other documents and information customarily provided as part of a due diligence process.

       E.     Disney shall warrant to the Acquirer(s) that each Divestiture Asset will be operational on the date of sale.

       F.     Defendants shall not take any action that will impede in any way the permitting, operation, or divestiture of the Divestiture Assets.

       G.     Disney shall warrant to the Acquirer(s) (1) that there are no material defects in the environmental, zoning, or other permits pertaining to the operation of each Divestiture Asset, and (2) that following the sale of the Divestiture Assets, Disney will not undertake, directly or

indirectly, any challenges to the environmental, zoning, or other permits relating to the operation of the Divestiture Assets.

H.     Notwithstanding Paragraph II(E), that the Divestiture Assets do not include trademarks, trade names, service marks, or service names containing the name "Fox," the defendants shall offer any Acquirer(s) of a Fox RSN a non-exclusive royalty-free license for use of the "Fox" trademark consistent with that RSN's current usage of that trademark for a time period of at least eighteen (18) months.

I.     At the option of Acquirer(s), on or before the closing date of any divestiture, Disney shall enter into one or more transition services agreements, approved in advance by the United States in its sole discretion, to provide any transition services reasonably necessary to operate any Divestiture Assets as viable, ongoing video networks or programming assets.

J.     Unless the United States otherwise consents in writing, the divestitures pursuant to Section IV, or by trustee appointed pursuant to Section V of this Final Judgment, shall include the entire Divestiture Assets and be accomplished in such a way as to satisfy the United States, in its sole discretion, that the Divestiture Assets can and will be used by the Acquirer(s) as part of a viable, ongoing business of selling, supplying, or licensing video programming.  Divestiture of the Divestiture Assets may be made to one or more Acquirers, provided that in each instance it is demonstrated to the sole satisfaction of the United States that the Divestiture Assets will remain viable, and the divestiture of such assets will achieve the purposes of this Final Judgment and remedy the competitive harm alleged in the Complaint.  The divestitures, whether pursuant to Section IV or Section V of this Final Judgment:

(1) shall be made to an Acquirer(s) that, in the United States' sole judgment, has the intent and capability (including the necessary managerial, operational,

technical, and financial capability) of competing effectively in the business of

selling, supplying, and licensing video programming; and

(2) shall be accomplished so as to satisfy the United States, in its sole discretion,

that none of the terms of any agreement between the Acquirer(s) and

defendants gives defendants the ability unreasonably to raise the costs of the

Acquirer(s), to lower the efficiency of the Acquirer(s), or otherwise to

interfere in the ability of the Acquirer(s) to compete effectively.

### V. <u>APPOINTMENT OF TRUSTEE</u>

A.      If Disney has not divested the Divestiture Assets within the time period specified

in Section IV(A), Disney shall notify the United States of that fact in writing, specifically

identifying the Divestiture Assets that have not been divested (the "relevant Divestiture Assets").

Upon application of the United States, the Court shall appoint a trustee selected by the United

States and approved by the Court to effect the divestiture of the relevant Divestiture Assets.

B.      After the appointment of a trustee becomes effective, only the trustee shall have

the right to sell the relevant Divestiture Assets.  The trustee shall have the power and authority to

accomplish the divestiture to an Acquirer acceptable to the United States at such price and on

such terms as are then obtainable upon reasonable effort by the trustee, subject to the provisions

of Sections IV, V, and VI of this Final Judgment, and shall have such other powers as this Court

deems appropriate.  Subject to Section V(D) of this Final Judgment, the trustee may hire at the

cost and expense of Disney any investment bankers, attorneys, or other agents, who shall be

solely accountable to the trustee, reasonably necessary in the trustee's judgment to assist in the

divestiture.  Any such investment bankers, attorneys, or other agents shall serve on such terms

and conditions as the United States approves, including confidentiality requirements and conflict of interest certifications.

     C.     Defendants shall not object to a sale by the trustee on any ground other than the trustee's malfeasance.  Any such objections by defendants must be conveyed in writing to the United States and the trustee within ten (10) calendar days after the trustee has provided the notice required under Section VI.

     D.     The trustee shall serve at the cost and expense of Disney pursuant to a written agreement, on such terms and conditions as the United States approves, including confidentiality requirements and conflict of interest certifications.  The trustee shall account for all monies derived from the sale of the relevant Divestiture Assets and all costs and expenses so incurred.  After approval by the Court of the trustee's accounting, including fees for its services yet unpaid and those of any professionals and agents retained by the trustee, all remaining money shall be paid to Disney and the trust shall then be terminated.  The compensation of the trustee and any professionals and agents retained by the trustee shall be reasonable in light of the value of the relevant Divestiture Assets and based on a fee arrangement providing the trustee with an incentive based on the price and terms of the divestiture and the speed with which it is accomplished, but timeliness is paramount.  If the trustee and Disney are unable to reach agreement on the trustee's or any agents' or consultants' compensation or other terms and conditions of engagement within 14 calendar days of appointment of the trustee, the United States may, in its sole discretion, take appropriate action, including making a recommendation to the Court.  The trustee shall, within three (3) business days of hiring any other professionals or agents, provide written notice of such hiring and the rate of compensation to defendants and the United States.

E.      Disney shall use its best efforts to assist the trustee in accomplishing the required divestiture.  The trustee and any consultants, accountants, attorneys, and other agents retained by the trustee shall have full and complete access to the personnel, books, records, and facilities of the business to be divested, and Disney shall develop financial and other information relevant to such business as the trustee may reasonably request, subject to reasonable protection for trade secret or other confidential research, development, or commercial information or any applicable privileges.  Defendants shall take no action to interfere with or to impede the trustee's accomplishment of the divestiture.

F.      After its appointment, the trustee shall file monthly reports with the United States and, as appropriate, the Court setting forth the trustee's efforts to accomplish the divestitures ordered under this Final Judgment.  To the extent such reports contain information that the trustee deems confidential, such reports shall not be filed in the public docket of the Court.  The trustee's reports shall include the name, address, and telephone number of each person who, during the preceding month, made an offer to acquire, expressed an interest in acquiring, entered into negotiations to acquire, or was contacted or made an inquiry about acquiring, any interest in the Divestiture Assets, and shall describe in detail each contact with any such person.  The trustee shall maintain full records of all efforts made to divest the relevant Divestiture Assets.

G.      If the trustee has not accomplished the divestitures ordered under this Final Judgment within six (6) months after its appointment, the trustee shall promptly file with the Court a report setting forth (1) the trustee's efforts to accomplish the required divestiture, (2) the reasons, in the trustee's judgment, why the required divestiture has not been accomplished, and (3) the trustee's recommendations.  To the extent such report contains information that the trustee deems confidential, such report shall not be filed in the public docket of the Court.  The

trustee shall at the same time furnish such report to the United States which shall have the right to make additional recommendations consistent with the purpose of the trust. The Court thereafter shall enter such orders as it shall deem appropriate to carry out the purpose of the Final Judgment, which may, if necessary, include extending the trust and the term of the trustee's appointment by a period requested by the United States.

H.     If the United States determines that the trustee has ceased to act or failed to act diligently or in a reasonably cost-effective manner, it may recommend the Court appoint a substitute trustee.

## VI. <u>NOTICE OF PROPOSED DIVESTITURE</u>

A.     Within two (2) business days following execution of a definitive divestiture agreement, Disney or the trustee, whichever is then responsible for effecting the divestitures required herein, shall notify the United States of any proposed divestiture required by Section IV or Section V of this Final Judgment. If the trustee is responsible, it shall similarly notify defendants. The notice shall set forth the details of the proposed divestiture and list the name, address, and telephone number of each person not previously identified who offered or expressed an interest in or desire to acquire any ownership interest in the Divestiture Assets, together with full details of the same.

B.     Within fifteen (15) calendar days of receipt by the United States of such notice, the United States may request from defendants, the proposed Acquirer, any other third party, or the trustee, if applicable, additional information concerning the proposed divestiture, the proposed Acquirer, and any other potential Acquirers. Defendants and the trustee shall furnish any additional information requested within fifteen (15) calendar days of the receipt of the request, unless the parties shall otherwise agree.

**C.**     Within thirty (30) calendar days after receipt of the notice or within twenty (20) calendar days after the United States has been provided the additional information requested from defendants, the proposed Acquirer(s), any third party, and the trustee, whichever is later, the United States shall provide written notice to defendants and the trustee, if there is one, stating whether or not it objects to the proposed divestiture.  If the United States provides written notice that it does not object, the divestiture may be consummated, subject only to defendants' limited right to object to the sale under Paragraph V(C) of this Final Judgment.  Absent written notice that the United States does not object to the proposed Acquirer(s) or upon objection by the United States, a divestiture proposed under Section IV or Section V shall not be consummated. Upon objection by defendants under Paragraph V(C), a divestiture proposed under Section V shall not be consummated unless approved by the Court.

## VII. <u>FINANCING</u>

Disney shall not finance all or any part of any purchase made pursuant to Section IV or Section V of this Final Judgment.

## VIII. <u>HOLD SEPARATE</u>

Until the divestitures required by this Final Judgment have been accomplished, defendants shall take all steps necessary to comply with the Hold Separate Stipulation and Order entered by this Court.  After the Transaction has been consummated or closed, defendants shall take no action that would jeopardize the divestiture ordered by this Court.

## IX. <u>AFFIDAVITS</u>

A.     Within twenty (20) calendar days of the filing of the Complaint in this matter, and every thirty (30) calendar days thereafter until the divestiture has been completed under Section IV or Section V of this Final Judgment, defendants shall deliver to the United States an

affidavit, signed by each defendant's Chief Financial Officer and General Counsel, which shall describe the fact and manner of defendant's compliance with Section IV or Section V of this Final Judgment.  Each such affidavit shall include the name, address, and telephone number of each person who, during the preceding thirty (30) calendar days, made an offer to acquire, expressed an interest in acquiring, entered into negotiations to acquire, or was contacted or made an inquiry about acquiring, any interest in the Divestiture Assets, and shall describe in detail each contact with any such person during that period.  Each such affidavit shall also include a description of the efforts defendants have taken to solicit buyers for and complete the sale of the Divestiture Assets, including efforts to secure regulatory approvals, and to provide required information to prospective Acquirers, including the limitations, if any, on such information. Assuming the information set forth in the affidavit is true and complete, any objection by the United States to information provided by defendants, including limitations on information, shall be made within fourteen (14) calendar days of receipt of such affidavit.

B.     Within twenty (20) calendar days of the filing of the Complaint in this matter, defendants shall deliver to the United States an affidavit that describes in reasonable detail all actions defendants have taken and all steps defendants have implemented on an ongoing basis to comply with Section VIII of this Final Judgment.  Defendants shall deliver to the United States an affidavit describing any changes to the efforts and actions outlined in defendant's earlier affidavits filed pursuant to this section within fifteen (15) calendar days after the change is implemented.

C.     Defendants shall keep all records of all efforts made to preserve and divest the Divestiture Assets until one year after such divestiture has been completed.

## X. **COMPLIANCE INSPECTION**

A.      For the purposes of determining or securing compliance with this Final Judgment, or of any related orders such as any Hold Separate Stipulation and Order, or of determining whether the Final Judgment should be modified or vacated, and subject to any legally recognized privilege, from time to time authorized representatives of the United States Department of Justice, including consultants and other persons retained by the United States, shall, upon written request of an authorized representative of the Assistant Attorney General in charge of the Antitrust Division, and on reasonable notice to defendants, be permitted:

>       (1) access during defendants' office hours to inspect and copy, or at the option of the United States, to require defendants to provide hard copies or electronic copies of, all books, ledgers, accounts, records, data, and documents in the possession, custody, or control of defendants, relating to any matters contained in this Final Judgment; and

>       (2) to interview, either informally or on the record, defendants' officers, employees, or agents, who may have their individual counsel present, regarding such matters.  The interviews shall be subject to the reasonable convenience of the interviewee and without restraint or interference by defendants.

B.      Upon the written request of an authorized representative of the Assistant Attorney General in charge of the Antitrust Division, defendants shall submit written reports or responses to written interrogatories, under oath if requested, relating to any of the matters contained in this Final Judgment as may be requested.

C.      No information or documents obtained by the means provided in this section shall be divulged by the United States to any person other than an authorized representative of the executive branch of the United States, except in the course of legal proceedings to which the United States is a party (including grand jury proceedings), or for the purpose of securing compliance with this Final Judgment, or as otherwise required by law.

D.      If at the time information or documents are furnished by defendants to the United States, defendants represent and identify in writing the material in any such information or documents to which a claim of protection may be asserted under Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure, and defendants mark each pertinent page of such material, "Subject to claim of protection under Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure," then the United States shall give defendants ten (10) calendar days' notice prior to divulging such material in any legal proceeding (other than a grand jury proceeding).

## XI. NO REACQUISITION

Disney may not reacquire any of the Divestiture Assets during the term of this Final Judgment without prior written approval of the United States.

## XII. RETENTION OF JURISDICTION

This Court retains jurisdiction to enable any party to this Final Judgment to apply to this Court at any time for further orders and directions as may be necessary or appropriate to carry out or construe this Final Judgment, to modify any of its provisions, to enforce compliance, and to punish violations of its provisions.

## XIII. ENFORCEMENT OF FINAL JUDGMENT

A.      The United States retains and reserves all rights to enforce the provisions of this Final Judgment, including its right to seek an order of contempt from this Court.  Defendants

agree that in any civil contempt action, any motion to show cause, or any similar action brought by the United States regarding an alleged violation of this Final Judgment, the United States may establish a violation of the decree and the appropriateness of any remedy therefor by a preponderance of the evidence, and they waive any argument that a different standard of proof should apply.

B.      The Final Judgment should be interpreted to give full effect to the procompetitive purposes of the antitrust laws and to restore all competition harmed by the challenged conduct. Defendants agree that they may be held in contempt of, and that the Court may enforce, any provision of this Final Judgment that, as interpreted by the Court in light of these procompetitive principles and applying ordinary tools of interpretation, is stated specifically and in reasonable detail, whether or not it is clear and unambiguous on its face.  In any such interpretation, the terms of this Final Judgment should not be construed against either party as the drafter.

C.      In any enforcement proceeding in which the Court finds that the defendants have violated this Final Judgment, the United States may apply to the Court for a one-time extension of this Final Judgment, together with such other relief as may be appropriate.  In connection with any successful effort by the United States to enforce this Final Judgement against a Defendant, whether litigated or resolved prior to litigation, that Defendant agrees to reimburse the United States for any attorneys'  fees, experts' fees, and costs incurred in connection with that enforcement effort, including the investigation of the potential violation.

## XIV. <u>EXPIRATION OF FINAL JUDGMENT</u>

Unless this Court grants an extension, this Final Judgment shall expire seven (7) years from the date of its entry, except that this Final Judgment may be terminated upon notice by the

United States to the Court and the defendants that the divestitures have been completed and that the continuation of the Final Judgment no longer is necessary.

## XV. PUBLIC INTEREST DETERMINATION

Entry of this Final Judgment is in the public interest. The parties have complied with the requirements of the Antitrust Procedures and Penalties Act, 15 U.S.C. § 16, including making copies available to the public of this Final Judgment, the Competitive Impact Statement, and any comments thereon, and the United States' responses to comments. Based upon the record before the Court, which includes the Competitive Impact Statement and any comments and responses to comments filed with the Court, entry of this Final Judgment is in the public interest.

Date: _____

Court approval subject to procedures of
Antitrust Procedures and Penalties Act,
15 U.S.C. § 16

_____

United States District Judge