UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

*Plaintiff,*

v.

THE WALT DISNEY COMPANY, and
TWENTY-FIRST CENTURY FOX, INC.,

*Defendants.*

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9/27/18

## HOLD SEPARATE STIPULATION AND ORDER

It is hereby stipulated and agreed by and between the undersigned parties, subject to approval and entry by the Court, that:

### I. Definitions

As used in this Hold Separate Stipulation and Order:

A.  "Acquirer" or "Acquirers" means the entity or entities to which defendants divest any of the Divestiture Assets.

B.  "Disney" means defendant The Walt Disney Company, a Delaware corporation headquartered in Burbank, California, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships, and joint ventures, and their directors, officers, managers, agents, and employees.

C.  "Fox" means defendant Twenty-First Century Fox, Inc., a Delaware corporation headquartered in New York, New York, its successors and assigns, and its subsidiaries,

divisions, groups, affiliates, partnerships, and joint ventures, and their directors, officers, managers, agents, and employees.

    D.    "Fox RSNs" means all of Fox's interests in the following video networks or programming assets:

    (1) Fox Sports Arizona;

    (2) Fox Sports Carolinas;

    (3) Fox Sports Detroit;

    (4) Fox Sports Florida;

    (5) Fox Sports Indiana;

    (6) Fox Sports Kansas City;

    (7) Fox Sports Midwest;

    (8) Fox Sports New Orleans;

    (9) Fox Sports North;

    (10) Fox Sports Ohio;

    (11) SportsTime Ohio;

    (12) Fox Sports Oklahoma;

    (13) Fox Sports San Diego;

    (14) Fox Sports South;

    (15) Fox Sports Southeast;

    (16) Fox Sports Southwest;

    (17) Fox Sports Sun;

    (18) Fox Sports Tennessee;

    (19) Fox Sports West;

  (20) Prime Ticket;

  (21) Fox Sports Wisconsin; and

  (22) the YES Network.

  E. "Divestiture Assets" means all of Fox's interests in the Fox RSNs, including, all of the assets, tangible or intangible, necessary for the operations of the Fox RSNs as viable, ongoing video networks or programming assets, including, but not limited to, all real property (owned or leased), all broadcast equipment, office furniture, fixtures, materials, supplies, and other tangible property; all licenses, permits and authorizations issued by any governmental organization relating to the operation of the asset; all contracts (including content, programming and distribution contracts and rights), agreements (including transition services agreements), leases, and commitments and understanding of defendants; all trademarks, service marks, trade names, copyrights, patents, slogans, programming materials, and promotional materials relating to each video network; all customer lists, contracts, accounts, credit records, and all logs and other records maintained by Fox in connection with each video network. Except as provided in the Final Judgment, Divestiture Assets does not include trademarks, trade names, service marks, or service names containing the name "Fox."

  F. The term "Transaction" means the transaction that is the subject of the Agreement and Plan of Merger among Twenty-First Century Fox, Inc., The Walt Disney Company, TWDC Holdco 613 corp., WDC Merger Enterprises II Corp., and WDC Merger Enterprises I, LLC, dated June 20, 2018.

## II. Objectives

The Final Judgment filed in this case is meant to ensure defendants' prompt divestiture of the Divestiture Assets for the purpose of establishing one or more viable competitors in the sale,

3

supply, or licensing of video programming in the United States in order to remedy the effects that the United States alleges would otherwise result from the Transaction. This Hold Separate Stipulation and Order ensures, prior to such divestitures, that the Divestiture Assets will remain economically viable, and ongoing business concerns that will remain independent and uninfluenced by Disney or, after the Transaction has been consummated, by Fox, and that competition is maintained during the pendency of the ordered divestitures.

### III. Jurisdiction and Venue

The Court has jurisdiction over the subject matter of this action and over each of the parties hereto, and venue of this action is proper in the United States District Court for the Southern District of New York.

### IV. Compliance with and Entry of the Proposed Final Judgment

A. The parties stipulate that a Final Judgment in the form attached hereto as Exhibit A may be filed with and entered by the Court, upon the motion of any party or upon the Court's own motion, at any time after compliance with the requirements of the Antitrust Procedures and Penalties Act ("APPA"), 15 U.S.C. § 16, and without further notice to any party or other proceedings, provided that the United States has not withdrawn its consent, which it may do at any time before the entry of the proposed Final Judgment by serving notice thereof on the defendants and by filing that notice with the Court. Disney agrees to arrange, at its expense, publication as quickly as possible of the newspaper notice required by the APPA, which shall be drafted by the United States, in its sole discretion. The publication shall be arranged no later than three business days after defendants' receipt from the United States of the text of the notice and the identity of the newspaper within which the publication shall be made. Disney shall promptly send to the United States (1) confirmation that publication of the newspaper notice has

been arranged, and (2) the certification of the publication prepared by the newspaper within which the notice was published.

B.  Defendants shall abide by and comply with the provisions of the proposed Final Judgment pending the Final Judgment's entry by the Court, or until expiration of time for all appeals of any Court ruling declining entry of the proposed Final Judgment and shall, from the date of the signing of this Stipulation by the parties, comply with all the terms and provisions of the proposed Final Judgment. The United States shall have the full rights and enforcement powers in the proposed Final Judgment as though the same were in full force and effect as the Final Order of the Court.

C.  Defendants shall not consummate the Transaction sought to be enjoined by the Complaint herein before the Court has signed this Hold Separate Stipulation.

D.  This Hold Separate Stipulation and Order shall apply with equal force and effect to any amended proposed Final Judgment agreed upon in writing by the parties and submitted to the Court.

E.  In the event (1) the United States has withdrawn its consent, as provided in Paragraph IV(A) above, or (2) the proposed Final Judgment is not entered pursuant to this Hold Separate Stipulation and Order, the time has expired for all appeals of any court ruling declining entry of the proposed Final Judgment, and the Court has not otherwise ordered continued compliance with the terms and provisions of the proposed Final Judgment, then the parties are released from all further obligations under this Hold Separate Stipulation and Order, and the making of this Hold Separate Stipulation and Order shall be without prejudice to any party in this or any other proceeding.

F.	Disney represents that the divestitures ordered in the proposed Final Judgment can and will be made, and that defendants will later raise no claim of mistake, hardship or difficulty of compliance as grounds for asking the Court to modify any of the provisions contained therein.

## V. Notice of Compliance

. Within twenty (20) days after the entry of the Hold Separate Stipulation and Order, and every thirty (30) calendar days thereafter (1) Fox shall deliver to the United States an affidavit, signed by Fox's Chief Financial Officer and General Counsel, which shall describe the fact and manner of Fox's compliance with Section VI until defendants consummate the Transaction; and (2) Disney shall deliver to the United States an affidavit, signed by Disney's Chief Financial Officer and General Counsel, which shall describe the fact and manner of Disney's compliance with Section VII until the divestitures required by the Final Judgment have been accomplished.

## VI. Pre-Closing Asset Preservation Provisions

Until defendants consummate the Transaction:

A.	Fox shall preserve, maintain, and continue to operate each Divestiture Asset as an ongoing, economically viable, competitive video network or programming asset.

B.	Fox shall take all steps reasonably necessary to ensure that the Divestiture Assets will be maintained and operated as ongoing, economically viable and active competitors in the video network or programming business.

C.	Fox shall use all reasonable efforts, consistent with past practices, to maintain and increase the sales and revenues associated with each of the Divestiture Assets.

D.  Fox, consistent with past practices, shall provide sufficient working capital and lines and sources of credit to continue to maintain each Divestiture Asset as an ongoing, economically viable, and competitive video network or programming asset.

E.  Fox shall maintain, in accordance with sound accounting principles, separate, accurate and complete financial ledgers, books, and records that report on a periodic basis, such as the last business day of every month, consistent with past practices, the assets, liabilities, expenses, revenues and income of each of the Divestiture Assets.

F.  Fox shall preserve the existing relationships between the Divestiture Assets and with each customer that advertises on or licenses content to a Divestiture Asset, each distributor that licenses content from a Divestiture Asset, and with others having business relations with any of the Divestiture Assets, in accordance with the ordinary course of business.

## VII. Post-Closing Hold Separate and Asset Preservation Provisions

Once the Transaction has been consummated and until the divestitures required by the Final Judgment have been accomplished:

A.  Disney shall preserve, maintain, and continue to operate each Divestiture Asset as an independent, ongoing, economically viable, competitive video network or programming asset, management, programming, distribution, sales and operations of such assets held entirely separate, distinct and apart from those of Disney's other operations. Disney shall not coordinate its programming, production, distribution, marketing, content purchases, or terms of sale of any products with those of any of the Divestiture Assets.

B.  Disney shall take all steps necessary to ensure that (1) the Divestiture Assets will be maintained and operated as independent, ongoing, economically viable and active competitors in the video network or programming business; (2) management of the Divestiture Assets will

7

not be influenced by Disney; and (3) the books, records, competitively sensitive production, programming, distribution, sales, content purchases, marketing and pricing information, and decision making concerning production, programming, distribution, sales, content purchases, pricing and marketing by or under any of the Divestiture Assets will be kept separate and apart from Disney's other operations.

C.   Disney shall use all reasonable efforts to maintain and increase the sales and revenues associated with each of the Divestiture Assets, and shall maintain at 2018 or previously approved levels for 2017, whichever is higher, all promotional, advertising, sales, technical assistance, marketing and other support for each of the Divestiture Assets.

D.   Disney shall provide sufficient working capital and lines and sources of credit to continue to maintain each Divestiture Asset as an ongoing, economically viable, and competitive video network or programming asset.

E.   Disney shall not, except as part of a divestiture approved by the United States in accordance with the proposed Final Judgment, remove, sell, lease, assign, transfer, destroy, pledge, or otherwise dispose of any of the Divestiture Assets.

F.   Disney shall maintain, in accordance with sound accounting principles, separate, accurate and complete financial ledgers, books, and records that report on a periodic basis, such as the last business day of every month, consistent with past practices, the assets, liabilities, expenses, revenues and income of each of the Divestiture Assets.

G.   Disney shall preserve the existing relationships between the Divestiture Assets and with each customer that advertises on or licenses content to a Divestiture Asset, each distributor that licenses content from a Divestiture Asset, and with others having business relations with any of the Divestiture Assets, in accordance with the ordinary course of business.

H. Defendants shall take no action that would jeopardize, delay, or impede the sale of the Divestiture Assets.

I. Defendants shall take no action that would interfere with the ability of any trustee appointed pursuant to the proposed Final Judgment to fulfill its obligations.

J. Disney shall appoint a person or persons to oversee the Divestiture Assets, who also will be responsible for defendants' compliance with this section. Such person or persons shall have complete managerial responsibility for the Divestiture Assets, subject to the provisions of this Final Judgment. In the event such person is unable to perform such duties, Disney shall appoint, subject to the approval of the United States, a replacement within ten (10) working days. Should Disney fail to appoint a replacement acceptable to the United States within this time period, the United States shall appoint a replacement.

## VIII. Duration of Hold Separate Obligations

Defendants' obligations under Section VI and VII of this Hold Separate Stipulation and Order shall remain in effect until (1) consummation of the divestitures required by the proposed Final Judgment or (2) until further order of the Court. If the United States voluntarily dismisses the Complaint in this matter, defendants are released from all further obligations under this Hold Separate Stipulation and Order.

Dated: June 27, 2018

Respectfully submitted,

**FOR PLAINTIFF
UNITED STATES OF AMERICA**

Craig Minerva
United States Department of Justice
Antitrust Division
Media, Entertainment, and Professional Services Section
450 Fifth Street, NW, Suite 4000
Washington, DC 20530
Tel: 202-353-2384
craig.minerva@usdoj.gov

10

**FOR DEFENDANT THE WALT DISNEY COMPANY**
COVINGTON & BURLING LLP

*/s/ Andrew A. Ruffino*

Andrew A. Ruffino (aruffino@cov.com)
The New York Times Building
620 Eighth Avenue
New York, New York 10018
(212) 841-1097

Thomas O. Barnett (tbarnett@cov.com)
(*pro hac vice application forthcoming*)
Anne Y. Lee (alee@cov.com)
James Dean (jdean@cov.com)
Megan Gerking (mgerking@cov.com)
One CityCenter
850 10th Street NW
Washington, DC 20001
(202) 662-6000

Kenneth Newman (Ken.Newman@disney.com)
Associate General Counsel and Assistant Secretary
The Walt Disney Company
77 West 66th Street, 15th Floor
New York, NY 10023
(212) 456-6080

**FOR DEFENDANT TWENTY-FIRST CENTURY FOX, INC.**
CLEARY GOTTLIEB STEEN & HAMILTON LLP

_____
George S. Cary (*pro hac vice application forthcoming*)
Kenneth S. Reinker
Tara Lynn Tavernia (*pro hac vice application forthcoming*)
2000 Pennsylvania Avenue, NW
Washington, DC 20006
Phone: (202) 974-1743
Fax: (202) 974-1999
gcary@cgsh.com
kreinker@cgsh.com
ttavernia@cgsh.com

ORDER

IT IS SO ORDERED by the Court, this 24 day of September, 2018.

_____
Chief United States District Judge